IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | |
|---|---|
| BASS PRO STATION, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:20-cv-34 |
| BASS PRO OUTDOOR WORLD, LLC, | ) |
| Defendant. | ) |

# COMPLAINT

Plaintiff Bass Pro Station, LLC ("Plaintiff"), by and through the undersigned counsel and for its cause of action against Defendant Bass Pro Outdoor World, LLC ("Defendant") states as follows:

# INTRODUCTION

1. Plaintiff brings this cause of action for breach of a written Real Estate Purchase and Sale Contract (the "Sale Contract") between Plaintiff and Defendant for the purchase of three parcels of contiguous real property, buildings, and other improvements located at 3629 Outdoor Sportsman Place, Kodak, Sevier County, Tennessee 37764 (the "Property"). Plaintiff seeks recovery of the $500,000.00 purchase deposit held in escrow to which it is entitled based upon Defendant's breach of the Sale Contract and failure to close the sale. In addition, Plaintiff seeks recovery from Defendant of its costs and expenses, including reasonable attorney's fees, and any other relief to which it is entitled.

1

## PARTIES

2. Plaintiff Bass Pro Station, LLC is a Delaware limited liability company with its principal place of business located in Park City, Utah. Plaintiff is the owner of the Property and the seller under the Sale Contract. Plaintiff is also landlord to Defendant under the terms of a separate long-term lease respecting the Property. Plaintiff's property manager, who handled the negotiations and communications regarding the sale of the Property to Defendant, is PREP Co., LLC, a Delaware limited liability company which is located in Park City, Utah.

3. Defendant Bass Pro Outdoor World, LLC is a Missouri limited liability company with its principal place of business located in Springfield, Missouri. Defendant is the purchaser under the Sale Contract and tenant under the referenced lease. Defendant operates a Bass Pro Shops retail store on the Property. Defendant can be served via its registered agent, CT Corporation System, 300 Montvue Road, Knoxville, Tennessee 37919-5546.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the parties are completely diverse and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because: (a) Defendant conducts and/or conducted business in this judicial district; (b) Defendant's intentional acts giving rise to this claim occurred in this judicial district; and (c) the real property which is the subject of this action is situated in this judicial district.

## FACTS

6. On or about March 26, 2004, Defendant entered into a long-term retail lease (the "Lease") with The Universe, LLC ("The Universe"), Plaintiff's predecessor-in-interest, whereby

2

Defendant agreed to lease the Property. The original Lease term was for twenty (20) years, with subsequent renewal option periods of five (5) years each. Since 2004, ownership of the Property has changed hands a few times, and all rights of the owner assigned accordingly. Most recently, the Lease was assigned to Plaintiff through an Assignment and Assumption Agreement dated August 4, 2015. Plaintiff holds all rights of the owner and landlord under the Lease.

7. In early 2019, Plaintiff decided to sell the Property. Plaintiff was negotiating with another potential purchaser and was close to finalizing a purchase and sale agreement with that purchaser when Defendant expressed an interest in purchasing the Property. Through the respective internal real estate and legal departments of Defendant and PREP, Plaintiff and Defendant negotiated the Sale Contract. Defendant proposed and drafted the initial terms of the Sale Contract. Plaintiff and Defendant entered into the Sale Contract, as of the effective date of May 20, 2019, wherein Defendant agreed to purchase the Property from Plaintiff. A true and correct copy of the Sale Contract is attached hereto as **Exhibit A**. In reliance upon the Sale Contract with Defendant, Plaintiff declined the offer from the other potential purchaser of the Property.

8. The purchase price under the Sale Contract is eleven million, three hundred thousand dollars ($11,300,000.00). (**Exhibit A**, Section 2.)

9. As a requirement of the Sale Contract, Defendant made an initial cash deposit of five hundred thousand dollars ($500,000.00) (the "Deposit") with Fidelity National Title Insurance Company (the "Title Company"). (**Exhibit A**, Section 2.) The Title Company still holds the Deposit, and it is anticipated that the Title Company will interplead the funds in this litigation.

10. The balance of the purchase price was to be paid in cash at the closing of the transaction, with the Deposit amount credited against the purchase price. (**Exhibit A**, Section 2.)

11. The Sale Contract provided for a defined Inspection Period for Defendant, stating:

> Purchaser shall have the right to terminate this Contract if on or before 5:00 p.m. Eastern time on the thirtieth (30th) day following the Effective Date Purchaser shall have delivered to Seller written notice that Purchaser is not satisfied (in its sole discretion) with its due diligence investigations of the Property. Said period of time from the Effective Date until 5:00 p.m. Eastern time on the thirtieth (30th) day following the Effective Date, is herein defined as the "Inspection Period". If Purchaser fails to deliver written notice of termination prior to the expiration of the Inspection Period, then this Contract shall remain in full force and effect. . . .

(**Exhibit A**, Section 6(b).) Accordingly, Defendant had thirty days from the Effective Date of May 20, 2019, to exercise its right to terminate the Sale Contract upon written notice to Plaintiff. As the tenant under the Lease, Defendant was in possession of the Property throughout the Inspection Period and was fully aware of the condition of the Property. Defendant never provided any notice of an issue with the condition of the Property prior to the expiration of the Inspection Period. The Inspection Period expired at 5:00 p.m. Eastern time on June 19, 2019, and Defendant did not terminate the Sale Contract by that date.

12. Additionally, the purchase price negotiated by Defendant and agreed to by Plaintiff contemplated that Defendant would take the Property "as is." The Sale Contract expressly provides:

> **PURCHASER HEREBY AGREES AND ACKNOWLEDGES THAT, EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS CONTRACT, THE ACQUISITION OF THE PROPERTY IS AND SHALL BE ON AN "AS IS, WHERE IS" BASIS AND WITH ALL FAULTS AND DEFECTS, BOTH PATENT AND LATENT, SEEN AND UNFORSEEN AND SELLER DISCLAIMS ALL WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT TO THE PROPERTY. THE PROVISIONS OF THIS SECTION SHALL SURVIVE THE CLOSING OR ANY TERMINATION OF THIS CONTRACT.**

(**Exhibit A**, Section 8 (emphasis in original).) Thus, after the Inspection Period expired, Plaintiff understood that Defendant had no additional complaints or issues respecting the Property and that, pursuant to the Sale Contract, Defendant was accepting the Property "**AS IS, WHERE IS**."

13. The Sale Contract, which was drafted by Defendant, provides that the closing "shall take place on or before December 31, 2019." (**Exhibit A**, Section 10.) Plaintiff agreed to the

4

proposed closing date of "on or before December 31, 2019" in anticipation of receiving percentage rent owed under the Lease through the end of December.

14. The Sale Contract provides:

> If the transaction contemplated by this Contract fails to close because of a default by Purchaser, Seller's sole remedy shall be to terminate this Contract and to receive the Deposit as and for liquidated damages.

(**Exhibit A**, Section 7.)

15. The Sale Contract further provides:

> In the event either party commences litigation against the other with respect to this Contract, the non-prevailing party, as determined by a court of competent jurisdiction in such litigation, shall pay the prevailing party's reasonable costs and expenses, including its reasonable attorney fees.

(**Exhibit A**, Section 13.)

16. On or about September 24, 2019, Plaintiff received a letter from Defendant purporting that Defendant was "ready, willing, and able to close on the purchase of the Property as early as October 1, 2019" (the "September 24, 2019, Letter"). A true and correct copy of the September 24, 2019, Letter is attached hereto as **Exhibit B**.

17. On or about October 1, 2019, in-house counsel for PREP responded to the September 24, 2019, Letter to explain that Plaintiff wished to either keep the December closing date originally agreed to in the Sale Contract or some mutually agreeable date shortly before the end of December (the "October 1, 2019, Letter"). A true and correct copy of the October 1, 2019, Letter is attached hereto as **Exhibit C**.

18. Defendant did not respond for several weeks after receiving Plaintiff's October 1, 2019, Letter. Counsel for Defendant finally emailed on October 25, 2019, to request a conference call with attorneys for PREP. This was the first response Plaintiff (or PREP) received to its October 1, 2019, Letter.

19. The parties conferred by phone on October 30, 2019. In the call, Defendant, through its real estate representative, stated that they may no longer "need" the deal and may elect to terminate it, notwithstanding the fact that the Inspection Period had passed.

20. Despite this threat, Defendant did not terminate the Sale Contract, provided no explanation of why it believed the Sale Contract could be terminated, and did not give notice of any perceived or alleged breach of the Sale Contract by Plaintiff. Moreover, Defendant never provided any notice (written or otherwise) of termination of the Sale Contract.

21. Because Defendant did not give notice of termination of the Sale Contract, Plaintiff continued to prepare for the upcoming closing at the end of December.

22. On November 15, 2019, after leaving several unreturned voicemails for Defendant's counsel, counsel for PREP sent an email to Defendant's counsel asking Defendant to begin getting the documents ready in anticipation of closing at the end of December. On November 18, 2019, Defendant's counsel responded by email, stating that they would "devote our attention to this matter as we get closer to your client's desired closing date." A true and correct copy of the November 15-18, 2019, email thread is attached hereto as **Exhibit D**.

23. Based upon these emails, Plaintiff understood that Defendant intended to proceed with closing at the end of December, as agreed.

24. On November 19, 2019, counsel for PREP responded to Defendant's November 18, 2019, email, asking to confirm a closing date and other details for the closing. After receiving no response, counsel for PREP emailed Defendant's counsel on December 4, 2019, again attempting to discuss preparation of the closing documents. Defendant did not respond. A true and correct copy of these emails is attached hereto as **Exhibit E**.

25. On December 10, 2019, counsel for PREP sent draft closing documents for Defendant's review and attempted to coordinate the documents and signatures needed to close, as well as payoff logistics. Defendant's counsel responded by email that same day, stating only: "Receipt acknowledged. I am awaiting direction from the client." Again, Defendant's email gave no indication that it intended to terminate the Sale Contract or not close the transaction. Counsel for PREP emailed back immediately, asking when counsel would be able to speak to his client and provide the requested information. Defendant's counsel did not respond. A true and correct copy of the December 10, 2019, email thread is attached hereto as **Exhibit F**.

26. Because it had not heard otherwise from Defendant, Plaintiff continued preparations for closing on December 31, 2019, including circulating updated drafts of the closing documents, preparing closing checklists, and communicating with the Title Company via email dated December 16, 2019.

27. Counsel for PREP sent a follow up email to Defendant's contacts on December 17, 2019, forwarding copies of the multitude of prior communications and stating:

> Per Section 14 of the PSA, you are hereby put on notice of the attached communications that have been sent over the last few months via email in accordance with the PSA. I have made multiple attempts to communicate regarding the upcoming closing with Bass Pro, with relatively little to no response from Bass Pro.
>
> ***Seller is ready, willing and able to close on December 31, 2019*** and has been diligently working towards that closing date. We are assuming Bass Pro will be closing as the buyer in accordance with the terms of the PSA and we request that Bass Pro start communicating with the Seller and Title Company regarding the details of the upcoming closing. I have circulated closing documents for Bass Pro and Title Company's review and approval (see first email attachment). All documents will be executed by Seller by the end of the week. If you wish to comment on such documents prior to execution then please do so immediately.

A true and correct copy of the December 17, 2019, email is attached hereto as **Exhibit G.**

7

28.     Defendant never responded nor provided comments to any closing documents. On the morning of December 19, 2019, PREP's counsel sent an email to multiple contacts at the Title Company and Defendant circulating a detailed updated closing checklist and final closing documents. A true and correct copy of the December 19, 2019, email is attached hereto as **Exhibit H**.

29.     On December 19, 2019, at 4:02 p.m. (only seven business days prior to closing) Defendant sent a broad and ambiguous letter to Plaintiff stating that Plaintiff failed "to maintain and repair of [sic] the roof; heating, ventilating and air-conditioning system servicing the leased premises; and 'Bass Pro's Parking Field' (as defined in the subject Lease) in accordance with the requirements of the subject lease" (the "December 19, 2019, Letter"). A true and correct copy of the December 19, 2019, Letter is attached hereto as **Exhibit I**. The December 19, 2019, Letter also states that Defendant "considers this situation an emergency" and demands immediate remedy of the claimed issues. (**Exhibit I**.)

30.     The December 19, 2019, Letter also vaguely "calls [Plaintiff's] attention" to Section 24 of the Sale Contract, which addresses conditions precedent to closing. (**Exhibit I**.) However, it does not allege that any specific subsection was breached or that Plaintiff failed to meet any condition precedent to closing.

31.     Section 24 of the Sale Contract states:

Purchaser shall have no obligation to close unless, at or prior to the Closing, the following conditions are each satisfied or waived in writing by Purchaser: (a) the Title Company shall have on the Closing Date committed to issue to Purchaser in due course after the Closing the Title Policy insuring good, fee simple, marketable title to the Property in Purchaser subject only to the Permitted Exceptions; (b) each of the agreements, covenants, warranties and representations of Seller shall be true and correct in all material respects at the time of the Closing and Seller shall not be in default of any provision of this Contract; (c) Seller shall have executed and deposited with the Title Company all documents called for to be executed and deposited by Seller under this Contract and Seller shall have delivered to Purchaser all items to be delivered by Seller at the Closing; and (d) all other conditions and covenants of this Contract for the benefit of Purchaser shall have been satisfied or waived in writing by

8

> Purchaser. If any of the foregoing conditions precedent to Closing shall fail to occur or are not waived in writing by Purchaser on or prior to the Closing, this Contract shall, at the option of Purchaser, be terminated in all respects and be of no further force and effect. In the event of such termination by Purchaser, the Deposit shall be returned to Purchaser.

(**Exhibit A**, Section 24.)

32. The following day, December 20, 2019, PREP responded via email acknowledging receipt of the December 19, 2019, Letter, noting that it had not received any prior notice of any emergency or outstanding maintenance issues, and requesting more specific information regarding the alleged emergency maintenance items so that they could be addressed immediately. A true and correct copy of the December 20, 2019, email is attached hereto as **Exhibit J**.

33. Defendant responded on December 23, 2019, for the first time providing several quotes and internal emails for various allegedly-necessary repairs, none of which had been previously sent to Plaintiff. A true and correct copy of the December 23, 2019, email is attached hereto as **Exhibit K**.

34. On or about December 24, 2019, PREP, on behalf of Plaintiff, further responded in writing to the December 19, 2019, Letter (the "December 24, 2019, Letter"). A true and correct copy of the December 24, 2019, Letter is attached hereto as **Exhibit L**.

35. From the time Plaintiff received the December 19, 2019, Letter, Plaintiff's property manager has made repeated attempts to follow up with Defendant respecting the purported "emergencies" in the December 19, 2019, Letter. As of the filing of this Complaint, Defendant still has not responded to Plaintiff.

36. The December 19, 2019, Letter was a last-minute and bad faith attempt by Defendant to avoid its obligations under the Sale Contract. The allegations in the Letter, even if legitimate

9

(which Plaintiff denies), do not affect Defendant's obligations to close under the Sale Contract, and Defendant remained fully obligated to close on the Property on December 31, 2019.

37. Plaintiff continued to prepare and complete all of its obligations for closing and to communicate with the Title Company. Plaintiff sent its complete and executed closing package to the Title Company and was ready, able, and willing to close on December 31, 2019.

38. On December 31, 2019, counsel for PREP again called and emailed Defendant's counsel to inquire about the status of closing. After receiving that email, and having been unresponsive since December 23, counsel for Defendant and one of Defendant's real estate representatives finally called PREP's counsel in the early afternoon of December 31st to notify Plaintiff that Defendant had no intention of closing. Defendant indicated that this was no longer a good business deal for Defendant and provided no other explanation for Defendant's failure to close.

39. At no time prior to December 31, 2019, did Defendant provide notice to Plaintiff that it did not intend to close on the Sale Contract. Defendant never provided written notice of termination of the Sale Contract. Defendant never provided the required notice of any purported failure by Plaintiff to meet any condition of the Sale Contract or that Plaintiff had breached any of its representations or warranties. Defendant, without explanation, simply stalled, was unresponsive, made untimely, nonspecific, and unfounded claims of default under the Lease, and then failed to close the Sale Contract on or before December 31, 2019.

40. Following the call from Defendant's counsel on December 31, 2019, Plaintiff sent a written notice of default under the Sale Contract to Defendant and a request to the Title Company for the release of the $500,000.00 Deposit (the "December 31, 2019, Notice of Default"). A true and correct copy of the December 31, 2019, Notice of Default is attached hereto as **Exhibit M**. Defendant did not respond to the Notice of Default.

41. On January 2, 2020, the Title Company emailed the parties for permission to release the Deposit to Plaintiff. Counsel for Defendant then emailed the Title Company that it would not consent to the release of the Deposit funds. A true and correct copy of this email chain is attached hereto as **Exhibit N**. Despite Plaintiff's repeated requests for written response, Defendant has provided no explanation of its failure to close the sale or of its objection to release of the Deposit funds to Plaintiff.

## COUNT I – BREACH OF CONTRACT

42. Plaintiff incorporates by reference each and every preceding paragraph as if fully set forth herein.

43. The Sale Contract is a valid and binding contract entered into by Plaintiff and Defendant.

44. Under the Sale Contract, Defendant agreed to purchase the Property from Plaintiff for eleven million, three hundred thousand dollars ($11,300,000.00). (**Exhibit A**, Section 2.)

45. Under the Sale Contract, Defendant made an initial cash Deposit of five hundred thousand dollars ($500,000.00), and further agreed that if "the transaction contemplated by this Contract fails to close because of a default by Purchaser, Seller's sole remedy shall be to terminate this Contract and to receive the Deposit as and for liquidated damages." (**Exhibit A**, Sections 2, 7.)

46. Defendant also agreed that the closing "shall take place on or before December 31, 2019." (**Exhibit A**, Section 10.)

47. By operation of the terms of the Sale Contract, once the Inspection Period passed, Defendant agreed to accept the Property "as is." Upon closing, under the terms of the Sale Contract, the Lease would terminate. Defendant had the opportunity to conduct its due diligence and terminate the Sale Contract prior to the expiration of the Inspection Period defined in the Sale Contract, but it

failed to do so. After the passing of the Inspection Period, Defendant cannot claim defaults under the Lease related to the condition of the Property as a reason for its failure to close the Sale Contract. Defendant never terminated the Sale Contract. Defendant never alleged that Plaintiff was in breach of the Sale Contract or failed to meet any condition of the sale. Defendant was contractually obligated to close the sale. Defendant materially breached the Sale Contract by failing to close on or before December 31, 2019.

48. Plaintiff timely provided all required closing documents and fulfilled all of its obligations under the Sale Contract. Plaintiff was in all ways ready, willing, and able to close the sale by the December 31, 2019, closing date required by the Sale Contract.

49. As a result of Defendant's breach, Plaintiff has incurred actual damages including, but not limited to, loss of opportunity to sell the Property to another buyer, loss of time on the market, substantial expenditures of time and resources to prepare for closing and to follow up with Defendant and respond to Defendant's subterfuge, and additional financing costs to extend its financing for the Property with its lender.

50. As provided in the Sale Contract, due to Defendant's default, Plaintiff's remedy is to receive the Deposit, in the amount of five hundred thousand dollars ($500,000.00), as its liquidated damages. (**Exhibit A**, Section 7.)

51. Finally, Plaintiff demands that it be awarded its reasonable costs and expenses, including its reasonable attorney fees, pursuant to the terms of the Sale Contract. (**Exhibit A**, Section 13.)

**WHEREFORE**, premises considered, Plaintiff prays:

1. That process issue and Defendant be required to appear and answer within the time required by law;

2. For judgment against Defendant and an order disbursing the $500,000.00 Deposit to Plaintiff;

3. For an award of Plaintiff's reasonable attorney's fees and expenses as provided under the Sale Contract;

4. That the costs of this action be charged to Defendant; and

5. For such other and further relief to which Plaintiff may be entitled.

Respectfully submitted,

*/s/ Phillip P. Welty*
Phillip P. Welty, #20327
Sarah L. Locker, #31994
GULLETT, SANFORD, ROBINSON & MARTIN, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
(615) 244-4994 – Phone
(615) 256-6339 – Fax
pwelty@gsrm.com; slocker@gsrm.com


*/s/ Robert P. Noell*
Robert P. Noell, #020231
WOOLF, McCLANE, BRIGHT,
ALLEN & CARPENTER, PLLC
Post Office Box 900
Knoxville, Tennessee 37901-0900
(865) 215-1000
rnoell@wmbac.com

*Attorneys for Plaintiff Bass Pro Station, LLC*